**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald Thomas LOCKWOOD, Defendant-Appellant.**

**No. 78–5631**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 3, 1979.

Roddy L. Harrison, Pecos, Tex. (Court-appointed), for defendant-appellant.

* Rule 18, 5th Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GOLDBERG, RONEY and TJO-FLAT, Circuit Judges.

PER CURIAM:

Donald Thomas Lockwood was convicted, following a bench trial, on a three-count indictment charging him with two marijuana offenses, 21 U.S.C. §§ 841(a)(1) and 846 (1976), and the unlawful possession of a sawed-off shotgun, 26 U.S.C. § 5861(d) (1976). He raises three points on appeal; the first two require brief discussion.

■ The trial below took place without a jury despite the absence of a written waiver by the defendant. Fed.R.Crim.P. 23(a) required this case to be tried by jury "unless the defendant waive[d] a jury trial in writing with the approval of the court and the consent of the government." We need not consider whether an oral waiver will suffice, cf. Horne v. United States, 264 F.2d 40, 41–42 (5th Cir.), cert. denied, 360 U.S. 934, 79 S.Ct. 1460, 3 L.Ed.2d 1549 (1959), because this record contains nothing that would indicate that the defendant, by his words or conduct, waived his right to a trial by jury. We reject the Government's invitation to remand the case for the limited purpose of holding a hearing to determine whether a waiver in fact occurred. The appellant is entitled to a new trial before a jury unless he elects to proceed before the court in a bench trial under rule 23(a).

Because a new trial is in order, we should address the propriety of the district court's denial of appellant's motion to suppress the marijuana and shotgun that are so vital to his convictions. In our view, the district court was correct in treating the seizure as an extended border search. The operative facts are not in dispute.

■ On February 25, 1978, at about 7:00 A.M., U.S. Customs Officer Paul Neely was on "still watch," observing the Boquillas Crossing Overlook in the Big Bend National Park, Texas. The Overlook is a distance of 50 to 100 yards from the Rio Grande River, across from Boquillas, Mexico. Neely saw a yellow sedan drive from Park Route 7 into the crossing area, on the Texas side of the river; soon thereafter a Mexican male crossed the river by boat from Mexico and met with the two occupants of the sedan (a man, who turned out to be Lockwood, and a woman). After a brief interlude, the Mexican male returned to the other side of the river. By this time, Officer Neely was giving fellow officer Robert Ray Anderson a radio account of the developments. The two individuals who had been in the yellow sedan returned to it and drove west on Park Route 7 to a gravel overlook; after circling the overlook they drove two miles east to a black-top overlook facing the river. Neely then saw a white Chevrolet pick-up truck park directly across the river on the Mexico side. Its two occupants, appearing to be Mexican, left the truck, one carrying a light-colored bag, and approached the river. At the same time, the male occupant of the yellow sedan went down to the river. Neely was unable to determine whether anyone crossed the river; about twenty minutes later he saw the two Mexicans and the man from the yellow sedan return to their respective vehicles. To his observation none of them had the bag he had seen earlier.

Moments later, the yellow sedan drove past Neely's location, and he radioed Officer Anderson to pick up the surveillance of the vehicle. Anderson followed the car and became suspicious when the woman in the back seat sat up and laid down several times. At a point sixteen miles from the border, he stopped the sedan and searched it. Packages of marijuana were found hidden throughout the car and the sawed-off shotgun was discovered.

In our view, an extended border search was conducted by Officer Anderson in this case. He and Officer Neely had ample cause to suspect that the yellow sedan had been in contact with someone who had crossed the border and that customs laws had been violated. See United States v. Johnson, 588 F.2d 147, 154 (5th Cir. 1979);

*United States v. Fogelman*, 586 F.2d 337, 343 (5th Cir. 1978). Though Neely did not see a border crossing take place, what he did observe would lead one to conclude that it was highly probable that a crossing actually occurred, *see United States v. Adams*, 569 F.2d 924, 925 (5th Cir.) (per curiam), *cert. denied*, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978), and Anderson was entitled to rely on his observations. Since the sedan was kept under surveillance practically constantly from the time Neely saw it depart the black-top overlook until Anderson stopped it, it can safely be concluded that the marijuana and shotgun were in the vehicle at the border. *See United States v. Fogelman*, 586 F.2d at 345–46 (Brown, C. J., concurring); *United States v. Martinez*, 577 F.2d 960, 962 (5th Cir.) (per curiam), *cert. denied*, 439 U.S. 914, 99 S.Ct. 288, 58 L.Ed.2d 262 (1978). The search was therefore proper.

REVERSED and REMANDED for a new trial.