BOLIN, Judge.
Raymond Campbell was adjudicated a juvenile delinquent based upon a finding that he was guilty of simple burglary in violation of Louisiana Revised Statutes 14:62. He appeals and we affirm.
The inculpatory evidence consisted of a written confession, an oral confession, exhibits consisting of some of the items taken in the burglary, and the testimony of an accomplice. Immediately prior to a hearing on the merits there was an evidentiary hearing on defendant’s motion to suppress the written confession and exhibits. The court overruled the motion to suppress and both the confessions and the exhibits were admitted in evidence at the trial on the merits.
On appeal it is asserted the trial court erred in refusing to suppress the confessions and exhibits. Appellant argues that the confessions were inadmissible because not proved to be freely and voluntarily made as required by Louisiana Revised Statutes 15:451.
The burglary occurred about December 28, 1975. On December 29, 1975 the juvenile was arrested and charged with the burglary, which he then denied, and was released on a bond signed by his mother.
The juvenile was again picked up at about 3:00 p. m., on January 23, 1976, in connection with a charge of discharging a firearm in the city of Mansfield. He was taken to the jail where he was interrogated by several members of the police department about the firearms charge, which he denied. He was again released in the custody of his mother.
Later the same date, at 9:00 p. m., four police officers went to defendant’s home and asked his parents if they could take Raymond to the station for further questioning. The officers requested one or both of the parents to accompany them. The mother agreed to come to the station as soon as she could dress and shortly thereafter she arrived at the station.
Raymond was interrogated in the presence of his mother for about twenty minutes, during which time he consistently denied being involved in either of the offenses about which he was being questioned. The principal interrogator was dissatisfied with the progress of the questioning and asked the mother to go into another room, which *713 she did. The questioning continued and the boy admitted firing the gun; also, he admitted he knew where the gun was hidden. When the mother returned to the room she told Raymond to give the officers the gun if he had it or if he knew where it was. He accompanied the officers to the pasture where.the gun was found covered by some leaves. They returned to the station and Raymond’s mother went home.
The officers continued to question Raymond for an hour or more and he was placed in jail about midnight where he remained until Monday afternoon, approximately 64 hours.
The officers testified he admitted both the firearms charge and confessed to the burglary. They also testified that Raymond received an explanation of his rights as required by the Miranda decision, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Raymond, on the other hand, steadfastly denied he orally confessed to the officers that he was involved in the burglary. He maintained he admitted only to knowing who had the gun and where it was hidden.
On Monday afternoon, January 26, 1976, the juvenile probation officer removed Raymond from the jail and told him the judge had said he could go home but that he (the officer) needed to talk with him first. During this conversation the officer advised Raymond of his Miranda rights. He testified he talked to the boy about five minutes and asked him if he wanted to make a statement; defendant answered affirmatively and wrote his statement or confession to the burglary in the officer’s presence. The form on which the confession is written contains a printed statement of the Miranda rights. Raymond acknowledged he read this printed statement of rights and that he understood he did not have to make any statement or confession. However, he said the officer told him he could go home if he wrote the statement. He claimed the confession was made because of fear that he would have to return to jail if he did not make it. The juvenile officer denied making any promises or imposing any conditions on Raymond’s release in order to obtain the confession.
Appellant urges on appeal the confessions were involuntary and for that reason inadmissible; that the adjudication of delinquency was based on this illegally admitted evidence and should be reversed and set aside. He argues the oral admission or confession was given as a result of threats from the police officers and after hours of continuous questioning out of the presence of his mother or of counsel. He stresses the written confession was involuntary because he gave it after being detained a considerable period of time during which he was without advice of parent or counsel, and after being told he would be released if he would make the statement, all in violation of Louisiana Revised Statutes 13:1577, A.[1]
Appellee urges that the. confessions were voluntary and that-R.S. 13:1577, B and C[2] qualify the mandate of Subsection A and *714 permit the detention in jail of a juvenile over the age of fifteen.
Appellant relies on cases involving violation of R.S. 13:1577. In State, in the Interest of Wesley, 285 So.2d 308 (La.App. 4th Cir., 1973,) the court held a confession inadmissible where it was obtained at two a. m., from a fourteen-year-old child who was taken into custody at eleven p. m., was detained and transported in association with adult offenders in violation of 13:1577(0); was interrogated over three hours in the middle of the night and who did not, during this period of time, have the benefit of counsel of parent, friend, attorney, judge, juvenile probation officer, or anyone else.
Also cited by appellant are the companion cases of State, in the Interest of White, 160 So.2d 344 (La.App. 4th Cir., 1964) and State in the Interest of Garland, 160 So.2d 340 (La.App. 4th Cir., 1964). In Garland a fifteen-year-old boy was taken into custody at 3:15 a. m., by two deputy marshals who had no reason to apprehend defendant except for his presence on the street at that hour. Garland was not released to his parent or custodian although no showing of impracticability or inadvisability had been made. Instead, for more than six hours he was interrogated by the police in the investigation of a series of burglaries allegedly committed by defendant and two other juveniles. At 5:30 a. m., Garland identified White (also age 15) as a companion and the police went to White’s home, awakened him and took him from his home to the jail. White was likewise not dealt with as required by 13:1577. On the contrary, he too was interrogated by the police until about nine a. m., at which time both Garland and White signed the two confessions. Under the facts recited the court concluded the confessions were not freely and voluntarily made and could not be used against the juveniles nor be admitted into evidence under Louisiana Constitution Articles 1, §§ 1 and 2, and United States Constitution, Amendment XIV.
We find no such extreme circumstances in this case as those in Wesley, Garland and White.
In considering the admissibility of the two confessions we will assume, and we are inclined to think rightly so, that the oral confession was involuntarily obtained and should have been suppressed. This is not to say that a juvenile defendant could not make a voluntary oral confession, but under the circumstances of this case the fact that the mother was required to leave the room where the interrogation was taking place and the alleged confession was obtained out of her presence makes that confession suspect.
However, we find the written confession was voluntarily given; that appellant was advised of his Miranda rights; that he read and understood these rights which were printed directly above the body of his confession; that the juvenile probation officer who released Raymond from jail and talked with him at the time of his release made no promises or threats in order to induce Raymond to make the written statement; and that Raymond, a sixteen-year-old junior in high school was of sufficient age and intelligence to realize what he was doing when he wrote his confession.
Finally, Curtis Henderson, who had confessed to the burglary and had served five months in Louisiana Training Institute, testified that he and Raymond committed the burglary together; that they took some money and Raymond took the gun which was identified as the one stolen from the burglarized building and the one which Raymond had fired on January 23, 1976.
Under Louisiana Code of Criminal Procedure Article 921, a judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the *715 court, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantive right of the accused, or constitutes a substantial violation of a constitutional or statutory right. State v. Hopper, 253 La. 439, 218 So.2d 551 (1969).
We find the written confession was- properly admitted into evidence, the state having proved the juvenile received and understood the Miranda warnings, and that the confession was free and voluntary and not the product of coercion, maltreatment, or promises. Louisiana Code of Criminal Procedure Article 703; State v. Whatley, 320 So.2d 123 (La.1975).
Finding no prejudicial error, and that the admissible evidence supports the judgment, it is affirmed.
JONES, J., dissents and assigns written reasons.

. R.S. 13:1577
A. Whenever a child is taken into custody, unless it is impracticable or inadvisable or has been otherwise ordered by the court, he shall be released to the care of a parent, tutor or other custodian, upon the promise of such parent, tutor or custodian to bring the child to the court at the time fixed. The court may require a bond from such person for the appearance of the child; and upon the failure of such person to produce the child when directed to do so, the court may, in addition to declaring the bond forfeited, punish that person as in case of contempt. If not so released such child shall be taken immediately to the court or to the place of detention designated by the court or probation officer. Any police officer, sheriff, probation officer, or other peace officer violating any of the terms of this section may be judged guilty of contributing to the act or condition which would bring a child within the provision of this chapter. Pending further disposition of the case, the child may be released to the care of a parent, tutor, agency or other person appointed by the court, or be detained in such place as shall be designated by the court or probation officer subject to further order.

. B. Nothing in this chapter shall be construed as forbidding any peace officer from immediately taking into custody any child who is found violating any law or ordinance, or whose surroundings are such as to endanger his welfare. In every case the officer taking into custody any child for detention shall im *714 mediately and in any event within twenty-four hours, report the fact to the court or probation officer and the case shall then be proceeded with as provided by law.
C. Except as hereinafter provided, no child shall be confined in any police station, prison or jail, or be transported or detained in association with criminal, vicious or dissolute persons. A child fifteen years of age or older may be placed in a jail or other place of detention for adults, but in a room or ward entirely separate from adults.